UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61490-CIV-WILLIAMS/SELTZER

ADELE ESTRIDGE,

    Plaintiff,

vs.

TARGET CORPORATION,

    Defendant.

_____/

ORDER ON DISCOVERY MOTIONS

THIS CAUSE is before the Court on the Motion of Plaintiff Estridge to Compel Defendant Target to Answer First Set of Interrogatories 4, 7, 8, and 17 and to Respond to First Requests for Production 9, 11, 12, 13, 14 and 21 (DE 19) and the Motion of Plaintiff Estridge to Compel Defendant Target to Answer Second Set of Interrogatories (DE 26) and the Court being sufficiently advised, it is hereby ORDERED that Plaintiff's Motions are GRANTED in part and DENIED in part as set forth below.

BACKGROUND

Plaintiff Adele Estridge alleges that on October 7, 2007, while shopping at a Target store in Margate, Florida, she was pushing her shopping cart around an end-cap onto a main aisle when she suddenly slipped in liquid on the floor, causing her injuries. According to Plaintiff, she moved to a dry part of the main aisle where she was seated until paramedics arrived. Plaintiff contends that she observed a three foot area covered with a liquid that looked and smelled like Pine-Sol; she also observed tracks and footprints in the liquid and an empty bottle of Pine-Sol. Plaintiff further states that the end-cap display

contained Pine-Sol bottles in both vertical and horizontal positions. Paramedics then transported Plaintiff to the hospital where she received medical treatment. Plaintiff alleges that she also ultimately required two surgeries as a result of her fall at Target.

The Complaint (DE 1-8 at 6-7) alleges that Defendant was negligent in the following ways: (1) failing to properly display its merchandise so as to preclude leaking of liquid; (2) permitting liquid from products offered for sale to leak onto the floor: (3) failing to warn business invitees of the presence of liquid on the floor when it knew or should have known of its presence; and (4) failing to correct a dangerous condition (liquid on the floor) when when it knew or should have known of its presence. Defendant has denied all material allegations and has asserted several affirmative defenses (DE 1-8 at 9-11) .

## PLAINTIFF'S MOTIONS TO COMPEL

Plaintiff now moves the Court to compel Defendant to answer Interrogaories Nos. 4, 7, 8, and 17 of its First Set of Interrogatories (DE 19) and Interrogatories Nos. 1, 2, and 3 of its Second Set of Interrogatories (DE 26). Plaintiff additionally moves the Court to compel Defendant to produce all documents responsive to Requests Nos. 9, 11, 12, 13, 14, and 21 of its First Requests for Production (DE 19). Defendant has responded to Plaintiff's Motions (DE 23 and 28), and Plaintiff has replied thereto (DE 24 and 29).

As a preliminary matter, the Court notes that in response to many of Plaintiff's discovery requests, Defendant has asserted various objections and then proceeded to answer the interrogatories and responded to the requests for production "subject to and without waiving" its objections. Plaintiff argues that such responses are insufficient and the Court, therefore, should overrule the objections. This Court agrees.

Although this practice has become commonplace, courts in the Eleventh Circuit

have found that "whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands." Tardif v. People for the Ethical Treatment of Animals, NO. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *2 (M.D. Fla. Apr. 29, 2011); see also Pepperwood of Naples Condominium Ass'n v. Nationwide Mutual Fire Ins. Co., No. 2:10-cv-753-FtM-36SPC, 2011 WL 4382104, at *4-5 (M.D. Fla. Sept. 20, 2011); Mann v. Island Resorts Dev., Inc., No. 3:08cv297/RS/EMT, 2009 WL 6409113, at *3 (N.D. Fla. Feb. 21, 2009). As one court in this District has noted, such objections and answer "preserve[ ] nothing and serve[ ] only to waste the time and resources of both the Parties and the Court. Further, such practice leaves the requesting Party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered." Consumer Elecs. Ass'n v. Compras and Buys Magazine, Inc., No. 08-21085-Civ, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008) (Simonton, M.J.). In determining the sufficiency of Defendant's responses to Plaintiff's discovery requests, the Court will consider only the answer provided and the arguments set forth in Defendant's response to the instant motion. The Court will now consider the specific discovery requests at issue.

Specific Discovery Requests[1]

    1.    Interrogatory No. 4 provides: "Please state whether there were any employees on duty to inspect and maintain the interior floor where Plaintiff was injured at the time of her fall and if so, each employee's name, last known address, telephone number, title or occupation, and whether each person is still employed by Target."

---

[1] Unless otherwise noted, the interrogatory numbers refer to those of Plaintiff's First Set of Interrogatories.

Similarly, Interrogatory No. 2 of Plaintiff's Second Set of Interrogatories provides: "Please state the name, last known address, and position or job description of each employee who was working inside the subject Target store at the time of the subject incident, and include any specific tasks for inspection or maintenance of interior flooring assigned to each employee."  And Request No. 12 seeks production of "[a]ll payroll and employee work schedule records identifying all employees, including job responsibility, time on the job and current address, who worked for Defendant on its property where Plaintiff was injured at any time during the week leading up to the incident described in the complaint, including the day and time of Plaintiff's fall."  Plaintiff argues that the identity of Target employees relates to Defendant's discharge of its duties to inspect, maintain, eliminate and warn against unsafe conditions.

In response to these Interrogatories, Defendant states:

> No person has sole responsibility for inspection and maintenance of the store premises or the particular area in question.  All Target employees on an on-going basis inspect their departments for the purpose of identifying and correcting any conditions that might potentially present a risk to guest and/or team members, as will as for general cleaning purposes.  Spill stations are located throughout the sales floor.

Response to Interrogatory No. 4.  Defendant additionally responds that it had agreed (in response to other discovery requests not at issue) to provide Plaintiff with the names of the employees on duty in the department where Plaintiff's alleged incident occurred.  And Defendant represented that it has already identified the names of all persons with knowledge regarding the subject incident.

The Court has considered the parties' arguments and concludes that since no specific employee was responsible for inspecting and maintaining the floor ways, Plaintiff

4

is entitled to the names of all employees (and requested identifying information, including job description) on duty at the subject store on the day of and prior to the subject incident. Presumably, Plaintiff seeks Defendant's payroll records and employee work schedules to identify these employees. As the Court is requiring Defendant to identify the employees (as limited by the Court), the Court will not require Defendant to produce the documents sought by Request No. 12.

2. Interrogatory No. 7 provides: "Please state whether at any time maintenance was performed or any inspection was made prior to Plaintiff's fall and on the day of Plaintiff's fall to determine whether the subject area was in a safe condition. If so, please state the time of each maintenance or inspection and the name and address, occupation and employer for each such person performing such maintenance or inspection." The Court finds that this Interrogatory seeks information that is relevant or may lead to admissible evidence relating to Defendant's duty to exercise reasonable care in maintaining the premises and preventing the occurrence of unsafe conditions. The Court, however, finds that the phrase "prior to Plaintiff's fall and on the day of Plaintiff's fall" to be ambiguous; it is unclear whether she is seeking the information for the day of the fall only or for days prior to the day of the fall. The Court, therefore, will require Defendant to answer Interrogatory No. 7 with respect the day of the subject incident and only for the time up to Plaintiff's fall on that day.

3. Interrogatory No. 8 provides: "Please state whether any other incident has occurred on the interior flooring of the store where Plaintiff was injured, and if so, the date and time each occurred, a description of how each occurred, the name or other means of identification and address of the person to whom it occurred, the exact location in which

5

it occurred, and whether any safety precaution was taken as a result of it, and if so, a description of such safety precaution."  And Request No. 21 seeks production of "[d]ocuments listing all claims of injuries having occurred inside the Defendant's property where Plaintiff was injured at any time during the three years leading up to and including the day of Plaintiff's injury alleged in the complaint."  Although neither discovery request contains a time limitation, in her motion, Plaintiff has agreed to limit them to a period of three years preceding the subject incident.  Defendant has agreed to provide the requested information only as to slip and fall incidents in the same department where Plaintiff fell for a period of one year.  The Court agrees that these discovery requests should be limited to slip and fall incidents, but does not agree to Defendant's narrow limitation as to the time or the area.  Accordingly, Defendant shall answer Interrogatory No. 8 and produce the documents responsive to Request No. 21 for all slip and fall incidents in the entire subject Target store for the three years preceding Plaintiff's fall.

4.    Interrogatory No. 17 provides:  "Please state whether you, your employees or representatives took photographs or made sketches of the physical layout of the area where Plaintiff fell and, if so, for each person please state the name and address, job title, description of their duties and the date and time such photographs or sketches were taken."  Defendant responded to Interrogatory No. 17 by asserting the work product privilege "per response to Request for Production 2."  Defendant then responded that its counsel "is in possession of a total of five (5) photographs believed to have been taken on the date of the alleged incident, which depict the area of the alleged incident, which were taken in anticipation of litigation."  Additionally, Defendant responded that its counsel is in

6

possession of one photograph that was provided pre-suit by Attorney Eric S. Rose.[2] Request No. 9 seeks production of "[a]ll logs, service reports, schedules, memos, notes, recordings, photographs, data and similar documents that refer to, relate to or commemorate maintenance, Defendant's inspection, examination, cleaning or evaluation of the conditions of the area where Plaintiff fell on the day that she fell." Defendant responded to Request No. 9 by referring Plaintiff to its response to Requests for Production Nos. 1 and 2. Neither party has identified or provided the Court with Defendant's responses to Requests Nos. 1 and 2. However, by Defendant's reference to the work product privilege "per Request for Production 2" in response to Interrogatory No. 17, the Court assumes that Defendant is also asserting the work product privilege with respect to the documents sought by Request No. 9.

Claims of work product protection are governed by Federal Rule of Civil Procedure 26(b)(3) (which codifies the work product doctrine first articulated in Hickman v. Taylor, 329 U.S. 495 (1947)).[3] Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." Fed. R. Civ. P. 26(b)(3)(A). Such documents and things, however, are discoverable upon a showing that the party seeking discovery has a

---

[2] Attorney Rose is not counsel of record. And Defendant has not identified him or his relationship to this litigation.

[3] Although in a diversity case (as here), state law applies to the application of the attorney-client privilege, federal law applies to the work product doctrine. Richard v. Sarosota County, No. 8:05-CV-927-T-27EAJ, 2007 U.S. Dist. LEXIS 33938 at *5-6 (M.D. Fla. May 9, 2007) (citing Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 201 (M.D. Fla. 1990)); First Pacific Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D. 574, 576 (N.D. Cal. 1995); see also Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc., 190 F.R.D. 532, 535 (S.D. Ind. 1999) (a federal court applies the standard for work product protection contained in the federal rule).

"substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "The burden of establishing that a document is work product is on the party who asserts the claim." Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp. 233 F.R.D. 678, 680 -681 (M.D.Fla.,2006) (citing Freiermuth v. PPG Indus, Inc., 218 F.R.D. 694, 700 (N.D. Ala.2003)). "Any doubts, ambiguities, uncertainties, or silences as to the scope of the work product Rule should be resolved in favor of the Rules' overall policy of liberal discovery." Pacific Gas and Elec. Co. v. U.S., 69 Fed. Cl. 784, 790 (Fed. Cl. 2006) (internal citations and quotation marks omitted). "This burden cannot be met through conclusory statements in a court filing. . . ." Hunter Ridge, 233 F.R.D. at 683. Here, Defendant has merely summarily stated that the photographs (and other requested documents) are protected by the work product doctrine and that they were taken in anticipation of litigation. Defendant has failed to provide the Court with any further detail regarding its counsel's procurement of the documents, such as who took the photographs or when (as requested by Interrogatory No. 17) or who provided the documents to counsel and the reason therefor. Accordingly, the Court finds that Defendant has failed to satisfy its burden of showing that the requested documents should be protected from disclosure as work product.

Furthermore, even if the requested documents constituted attorney work product, the Court finds that Plaintiff has demonstrated that she has a substantial need for the documents and cannot obtain their substantial equivalent by other means. According to Plaintiff, after she fell, she was transported to the hospital for treatment and, thus, had no opportunity to photograph the scene. "Courts have generally allowed discovery of photographs and diagrams which were made at the time of the accident because of the

inherent inability of a party to reproduce these materials." Reedy v. Lull Eng'r Co., Inc., 137 F.R.D. 405, 407 (M.D. Fla. 1991); see also Hamilton v. Great Lakes Dredge & Dock Co., No. 05-Civ-3862(DGT), 2006 WL 2086026, at *1 (E.D.N.Y. July 25, 2006) ("According to a leading treatise, photographs of an accident scene, taken immediately after an accident has occurred, are a common example of material for which there is a substantial need sufficient to overcome work product protection.") (citing 6 Moore's Federal Practice, § 26.70[5][c] (3d. ed.)).

Defendant argues that Plaintiff's assertion of "substantial need" is belied by her deposition testimony in which she was able to recall many details about the layout of the area where the subject accident occurred, and, moreover, by the testimony of several Target employees as to the details of the spill. Such an argument, however, was rejected by the Reedy court, stating that it is doubtful that the deposing testimony of witnesses years after the accident occurred would be able to recall the same detailed information about the condition of a site at the time of the accident that a photograph would provide. Reedy, 137 F.R.D. at 407. This Court agrees. Accordingly, Defendant shall fully answer Interrogatory No. 17 and produce all documents (including the photographs in Defendant's counsel's possession) responsive to Request No. 9.

5.  Interrogatory No. 1 of Plaintiff's Second Set of Interrogatories provides: "Please state the name of each department inside the subject Target store and provide the total square footage of all interior retail space inside the subject Target store on the date of the incident." Plaintiff argues that the information sought by this Interrogatory "bears on issues relating to Target's discharge of its duties to inspect, maintain, eliminate or warn of the occurrence of unsafe conditions" According to Plaintiff, "[w]ithout knowing the

department size of the area to maintain, one cannot make decisions regarding the level of staffing and assignments reasonably sufficient to prevent or discover unsafe conditions." She offers an example: "[P]roviding only 6 team sales members to staff a 100,000 square feet of retail space indisputably would be insufficient to discharge Defendant's duties to inspect maintain, warn and repair unsafe conditions."  Reply at 4 (DE 29).

Defendant argues that the information sought is not relevant nor is Interrogatory No. 1 calculated to lead to admissible evidence.  It contends that the square footage of each department and the total square footage of the subject Target store "does not have any bearing on the level of staffing in the store as was clearly indicated in the deposition taken by Plaintiff's counsel of Target employee Natalie Wilson, executive team leader for human resources."  Response at 2 (DE 28).

The Court finds the relevancy of the information sought by Interrogatory No. 1 tenuous at best.  It, therefore, will require Defendant to provide only the total square footage of the department in which Plaintiff fell.

6. Interrogatory No. 3 of Plaintiff's Second Set of Interrogatories requests that Defendant "state the average daily number of customers visiting the subject Target store during the period including the date of the subject incident" and to "state the total number of customers who made a purchase in the subject Target store on the date of the subject incident."  Similarly, Request No. 11 seeks production of "[a]ll documents from which defendant determines or can determine the estimate/average of the number of daily customers visiting the store where the incident described in the complaint occurred during the three years leading up to the day of the incident described in the complaint."  In response to the motion with respect to Interrogatory No. 3, Defendant states that it "does

not track the number of patrons who visits its stores" and, therefore, it is unable to provide the average daily number of customers and that it is "unable to state the number of customers who made purchases on the date of the subject incident as same assumes that each transaction is conducted by a different customer, which is not always the case." Additionally, Defendant represents that "information regarding total sales transactions in October 2007 [the time of the subject incident] for the subject store were deleted from Defendant's systems in the normal course of business." As it is appears that Defendant is unable to answer Interrogatory No. 3 or produce documents responsive to Request No. 11, Plaintiff's motions with respect to these two discovery requests are denied.

7.   Request No. 13 seeks production of "[a]ll of defendant's written manuals and operating procedures instructing employees on the inspection or maintenance of its interior walkways for the safety of customers that were in existence at the time of the incident described in the complaint." Similarly, Request No. 14 seeks production of "[a]ll training manuals and related documents used to train employees for the inspection or maintenance of its interior walkways for the safety of customers that were in existence at the time of the incident." In response to these Requests, Defendant objects on the ground of trade secrets and states that it has produced the Target Team Member Handbook and the Spill Clean-Up Procedures. It indicates that it will produce other responsive documents upon execution of a Stipulated Protective Order.[4]

There exists "no absolute privilege for trade secrets and similar confidential material." Fed. Open Mkt. Comm. v. Merrill, 443 U.S. 340, 362 (1979) (quoting 8 C.

---

[4] Plaintiff has represented that she agreed to enter into a Stipulated Protective Order; however, it appears that the parties were unable to agree as to its form.

11

Wright & A. Miller, Federal Practice and Procedure § 2043 at 300 (1970)); Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir.1981); Natta v. Zletz, 405 F.2d 99, 101 (7th Cir. 1968); Kaiser Aluminum & Chem. Corp. v. Phosphate Eng'g and Constr. Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla.,1994); Empire of Carolina, Inc. v. Mackle 108 F.R.D. 323, 326 (S.D. Fla. 1985) (Marcus, J.). A party, therefore, cannot resist discovery on the ground of "trade secrets." Rather, "the means by which protection from discovery of trade secrets is to be obtained is by motion under [Federal Rule of Civil Procedure] 26(c)[1][G]." Flint Hills Scientific, LLC v. Davidchack, No. 00-2334-KHV, 2001 WL 1718276, at *10 (D. Kan. Nov. 14, 2001). Rule 26(c)(G) authorizes upon a showing of good cause a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

A party seeking to shield its trade secrets or other commercial information must establish that the information to be protected is a trade secret, that it is confidential, and that its disclosure might be harmful. The burden then shifts to the party seeking disclosure to establish that the trade secret or confidential information sought is relevant and necessary to the action. ; Centurion, 665 F.2d at 325; In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir.1991); Grynberg v. Total S.A., No.03-cv-01280-WYD-BNB, 2006 WL 1186836, at *2 (D. Colo. May 3, 2006); Empire of Carolina, 108 F.R.D. at 326. Once these requirements are met, the court must balance "the need for protection of trade secrets against the claim of injury resulting from disclosure." Id.

Defendant here has not requested a protective order permitting it to withhold discovery on the ground of "trade secrets," nor has Defendant shown good cause for one.

12

Moreover, Defendant has failed to demonstrate that the documents withheld, in fact, contain trade secrets or other confidential business information. Indeed, the documents for which Defendant has summarily claimed "trade secret" protection – safety training manuals and operating procedures for maintenance and inspection of walkways – are not the types of documents that ordinarily contain trade secrets or other confidential business information. Accordingly, Defendant shall produce all documents responsive to Requests Nos. 13 and 14 that it has not already produced.

## ORDER

Based on the foregoing, it is hereby ORDERED that on or before February 24, 2012, Defendant shall fully and completely answer Interrogatory No. 4 (as limited by the Court), Interrogatory No. 7 (as limited by the Court), Interrogatory No. 8 (as limited by the Court), and Interrogatory No. 17 of Plaintiff's First Set of Interrogatories, as well as Interrogatory No. 1 (as limited by the Court) and Interrogatory No. 2 (as limited by the Court) of Plaintiff's Second Set of Interrogatories. It is further ORDERED that on or before February 24, 2012, Defendant shall produce all documents (not already produced) responsive to Request No. 9, Request No. 13, Request No. 14, and Request No. 21 (as limited by the Court) of Plaintiff's First Requests for Production. Plaintiff's Motions are DENIED in all other respects.

DONE AND ORDERED in Fort Lauderdale, Florida, this 16th day of February 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record